**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Givebutter, Inc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. _____ |
| | ) |
| Simplyk, Inc., d/b/a "Zeffy" | ) |
| | ) |
| and | ) **JURY DEMANDED** |
| | ) |
| 9355-0861 Québec Inc., d/b/a "Zeffy," | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

Plaintiff Givebutter, Inc. ("Givebutter"), for its complaint against Defendants Simplyk, Inc., d/b/a "Zeffy," and 9355-0861 Québec Inc., d/b/a "Zeffy," (collectively, "Zeffy"), hereby states as follows:

### Nature of the Action

1.    Givebutter and Zeffy run competing online fundraising platforms.  In an effort to win customers that otherwise would choose Givebutter as their fundraising platform, Zeffy has engaged in extensive false advertising on its website and in other marketing materials, making false and misleading statements about Givebutter's product offerings and fees and misusing Givebutter's mark.

2.    Zeffy's false and misleading statements have included a largely fictitious "case study" of a former Givebutter customer that switched to Zeffy; false and misleading comparisons between Givebutter's "optional tips" model and Zeffy's similar "voluntary contributions" model; false and misleading claims that Zeffy provides services for free that

Givebutter offers only on its premium "Givebutter Plus" plan; and false and misleading comparisons of Zeffy's and Givebutter's product offerings.  Zeffy has improperly displayed Givebutter's mark in connection with its false and misleading statements, and it has improperly displayed a false mark, invented by Zeffy and never used by Givebutter, that Zeffy falsely attributes to Givebutter.

3.    When Givebutter brought Zeffy's false and misleading statements and misuse of Givebutter's mark to Zeffy's attention, Zeffy made only modest changes to its website, removing only a small fraction of the false and misleading content.  Zeffy otherwise persisted in its false and misleading statements, demonstrating malicious and willful intent.

4.    Zeffy's misrepresentations violate the Lanham Act, 15 U.S.C. § 1125(a); the Delaware Unfair or Deceptive Trade Practices Act, 6 Del. Code § 2532, and common law unfair competition.  Givebutter seeks damages and injunctive relief.

## Parties

5.    Givebutter is incorporated under the laws of Delaware, with its principal place of business in Washington, DC.  Givebutter is an online fundraising platform, serving customers located in the United States and elsewhere.  Givebutter brings together everything nonprofits need to fund their missions, engage supporters, and manage donor data.

6.    Simplyk, Inc. is a Delaware corporation whose registered agent in Delaware is Corpomax, Inc., 2915 Ogletown Road, Newark, DE.

7.    9355-0861 Québec Inc. is incorporated under the laws of Québec, Canada. Its principal place of business is in Montreal, Québec.

8.    9355-0861 Québec Inc. previously did business in Canada as "Simplyk" or "Simplyk Communauté," an online fundraising platform predominantly serving the Canadian

market.  Upon information and belief, its founder and sole officer and director is Francois de Kerret.

9.     On June 2, 2021, Mr. de Kerret formed Simplyk, Inc. as a Delaware corporation.  Upon information and belief, Mr. de Kerret is Simplyk, Inc.'s sole officer and director.

10.     On or about April 20, 2022, "Simplyk" published on the Zeffy website an article announcing that "**Simplyk rebrands to Zeffy and expands to the United States.**"  The article states that "the Montreal-based startup has established itself as a key player in the nonprofit industry having recently closed $3.7M CAD in seed capital to fuel its growth in the United States. Since November 2021, over $500,000 has already been raised by American NPOs via the platform."

11.     Pages on Zeffy's website reference both Simplyk, Inc. and 9355-0861 Québec Inc. alternatively as "Zeffy."  Upon information and belief, Mr. de Kerret manages both companies together, as a single brand, "Zeffy," with Simplyk, Inc. being Zeffy's presence and representative in the United States.  Therefore, both Simplyk, Inc. and 9355-0861 Québec Inc. are jointly and severally responsible for the content of Zeffy's website and other marketing materials.

12.     Zeffy's website touts numerous prominent U.S.-based customers, including, for example, the American Cancer Society, Boys and Girls Club of America, Deaf in Government, and Professional Beauty Association.  Upon information and belief, Zeffy engages in extensive commerce in Delaware and elsewhere in the United States.  Through its website and other marketing materials, Zeffy actively advertises in the United States, seeking and engaging U.S.-based customers, who in turn engage in fundraising efforts using Zeffy's platform in the United States and elsewhere.

**Jurisdiction and Venue**

13.    This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Lanham Act, 15 U.S.C. § 1125.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Givebutter's state law claims under the Delaware Unfair or Deceptive Trade Practices Act, 6 Del. Code § 2532, and common law unfair competition because these claims are so related to Givebutter's Lanham Act claims that they form part of the same case or controversy under Article III of the United States Constitution.

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (3) because Simplyk, Inc. is a Delaware corporation, and is therefore a resident of this judicial district, and 9355-0861 Québec Inc. is not a resident of the United States.

15.    This Court has personal jurisdiction over both defendants because Simplyk, Inc. is a Delaware corporation and 9355-0861 Québec Inc. has substantial contacts with the state of Delaware through its formation of and association with Simplyk, Inc.

**Facts**

16.    Zeffy posted an article to its website dated August 1, 2024, entitled "After switching from Givebutter to Zeffy, Prairie Classical saved over $800 and found a 100% free fundraising partner."  https://www.zeffy.com/case-studies/prairie-classical.

17.    The article trumpeted a purported Zeffy customer who was said to have chosen to switch to Zeffy from Givebutter.  According to the article, "Finally, Mermagen landed on Givebutter. It was the sixth fundraising service she'd tried, and she was excited to feel like she was done searching. Mermagen was thrilled to have a free platform… But then the fees started rolling in."  The article goes on to allege that "the fees cut into the funds Mermagen raised" and

that Ms. Mermagen was "frustrated by a needlessly complex backend and lack of substantive customer support."

18.     Both the headline and the statements contained in the article are lies.  The customer in question created a Givebutter account, but the account was deleted within 30 minutes without ever processing a donation and without ever incurring any fee.  No fees ever "started rolling in" or "cut into the funds Mermegen raised."  Prairie Classical never "saved over $800" by switching from Givebutter.  Ms. Mermagen also was never "frustrated" by any "lack of substantive support," because she never made any effort to contact Givebutter's customer support until after she cancelled Prairie Classical's account.

19.     The demonstrably false statements in the article cast considerable doubt on whether other statements are accurate, including whether Givebutter was "the sixth fundraising service she'd tried."

20.     Zeffy's website also contains a deceptive comparison on its comparison page between Zeffy and Givebutter.  https://www.zeffy.com/home/givebutter-alternative.  Under the sections entitled "Platform fees" and "Fees," Zeffy claims prominently that it has "No platform fees. Ever," comparing itself positively to Givebutter.  Although the section notes in small print that Givebutter also charges no platform fees "if optional tips are disabled," it fails to note that Zeffy provides its customers no option to disable its "voluntary contributions," which are functionally identical to Givebutter's tips model.

21.     In other words, the only distinction between Givebutter and Zeffy on this dimension is that Givebutter gives its customers the choice to disable optional tips, in exchange for payment of platform fees, whereas Zeffy does not.  It is intentionally misleading for Zeffy to present this comparison while omitting Zeffy's own non-optional "voluntary contribution" model.

22.     Similarly, in a blog post dated November 14, 2024, which also contains the false assertions from Zeffy's Prairie Classical article, Zeffy prominently displays a graphic containing Givebutter's mark, without authority, and makes numerous additional false or misleading statements about Givebutter.  https://www.zeffy.com/blog/givebutter-reviews:

a.     "Tipping is required in order for the platform to be free."  This is intentionally ambiguous because it implies falsely that a platform fee will be charged if donors do not tip.  Also, as above, it omits the fact that Zeffy also funds itself through "voluntary contributions" from donors and gives no option to disable "voluntary contributions."

b.     "Zeffy is 100% free and always will be.  (We even cover transaction fees)." Particularly in juxtaposition with Zeffy's misleading claim about Givebutter, this statement falsely implies that Zeffy does not collect voluntary donations from donors, as Givebutter does.

c.     "Givebutter Plus features that are not available with Givebutter's basic plan: … Explore Zeffy, the 100% free Givebutter alternative."  By listing Givebutter features that are not available in Givebutter's basic plan and then advertising Zeffy as a "100% free Givebutter alternative," Zeffy falsely implies that Zeffy provides the same features as Givebutter provides, at a lower price.  This is not true.  Zeffy does not offer any of the features that are on Givebutter Plus.

d.     In a comparison table, Zeffy lists Givebutter's "Fees" as "Processing fees of up to 2.9% + 30¢ and a platform fee of 1–5% (which can be covered by donors)."  This is misleading.  There is no platform fee if optional tips are enabled.  In comparison, Zeffy identifies its own fees as "None," without disclosing that it gives the customer no option

6

to disable its "voluntary contributions," which is functionally identical to Givebutter's optional tips.

     e.    The same comparison table lists "Peer-to-peer campaigns" as a Zeffy feature but not a Givebutter feature. This is misleading because Givebutter offers the same feature. Similarly, although Givebutter does not advertise these features as such, Givebutter also offers "[r]affles & lotteries" and "[o]nline store" capabilities.

     f.    "Zeffy also does not have a paid version, so any feature that is available is always free. Givebutter Plus places a lot of the same features behind a paywall." This statement is false. Zeffy does not offer any of the Givebutter Plus features that Givebutter charges for.

     g.    "Zeffy offers most of the same powerful and easy-to-use features to collect donations—from customizable donation forms to automated emails and tax receipts. However, it offers a few more bells and whistles, like lottery tools, specific membership management tools, and the ability to create an online shop, allowing donors to engage with your nonprofit." In fact, Givebutter offers comparable capabilities, even if they are not advertised as such. Zeffy's description also omits the many "bells and whistles" that Givebutter offers that Zeffy does not. Givebutter features that are not offered by Zeffy include, but are not limited to: Card reader support, text-to-donate, PayPal and Venmo donations, Donorsearch integration, and much more. Zeffy does not offer "more bells and whistles."

     h.    "[Givebutter] has facilitated millions of dollars in donations for various causes …." In fact, Givebutter has facilitated billions of dollars in donations.

i.      This list of false and deceptive statements on Zeffy's website about Givebutter's products is not exhaustive.  There are numerous other examples, and many of the false claims identified above appear multiple times on various pages on Zeffy's site.

23.     Zeffy's false statements of fact and deceptive comparisons violate the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), because each was made "in commercial advertising or promotion," and "misrepresents the nature, characteristics, [or] qualities … of … another person's goods, services, or commercial activities."

24.     Zeffy's false statements of fact and deceptive comparisons also violate the Delaware Unfair or Deceptive Trade Practices Act, 6 Del. Code § 2532 because they "[r]epresent[] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," they "[d]isparage[] the goods, services, or business of another by false or misleading representation of fact," and they constitute "conduct which similarly creates a likelihood of confusion or of misunderstanding."  6 Del. Code § 2532(a)(5), (8), and (12).

25.     Zeffy's conduct, including its false statements and misleading comparisons related to its own product and Givebutter's product, also constitutes unfair competition under common law.

26.     Upon information and belief, there has been actual deception, or at least a tendency to deceive, a substantial portion of the intended audience of Zeffy's false statements and misleading comparisons.

27.     The deception is material in that it is likely to influence purchasing decisions of customers seeking or using fundraising platforms and related services offered by Zeffy or Givebutter.

28.    Zeffy offers and provides its advertised product in interstate commerce in the United States and competes with Givebutter in interstate commerce in the United States.

29.    Givebutter has been injured and continues to suffer a likelihood of injury in terms of declining sales, loss of goodwill, reputation, customers, and prospective customers, and the need to incur costs to combat market confusion caused by Zeffy's false statements and misleading comparisons. Givebutter has suffered and will suffer irreparable harm.

30.    Zeffy is also in violation of 15 U.S.C. § 1125(a)(1)(A) for its "use[] in commerce" of Givebutter's name along with a "symbol, or device" that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."

31.    Givebutter previously demanded Zeffy to cease the use of Givebutter's mark on Zeffy's website. Zeffy removed Givebutter's mark from one page on Zeffy's website, but then replaced it with a false mark – not Givebutter's mark – in combination with Givebutter's name to make it appear that it is Givebutter's mark. This false mark is likely to cause confusion or mistake about Givebutter's mark and to dilute Givebutter's true mark.

32.    On December 20, 2024, Givebutter, through counsel, sent a demand letter to Zeffy notifying Zeffy of the false statements, misleading comparisons, and misuse of Givebutter's mark identified above.

33.    Zeffy replied on January 6, 2025, stating that "we have already removed the Prairie Classical case study from our website. Additionally, in the comparison table, we have removed references to functional similarities and any claims of features attributed to Zeffy that are

also offered by Givebutter.  This includes adjustments to ensure that no inaccurate or misleading comparisons remain."

34.    Despite the express admission that Zeffy's website had contained "inaccurate or misleading comparisons," few substantial changes were made.  Although Zeffy removed the "case study" article about Prairie Classical, the same false claims from the article about Prairie Classical remained in its blog post of November 14, 2024, https://www.zeffy.com/blog/givebutter-reviews.  All of the other false and misleading statements identified above remained on Zeffy's website.

35.    Upon information and belief, Zeffy's false statements and misleading comparisons are made intentionally, maliciously, and in bad faith.

**Count I**
**False Advertising in Violation of Lanham Act, 15 U.S.C. § 1125(a)(1)(B)**

36.    The allegations set forth above are incorporated by reference as if fully set forth herein.

37.    Zeffy and its representatives and agents made false and misleading statements as to its own products and Givebutter's products, including but limited to false or misleading statements about Givebutter's product offerings and fees, and false or misleading comparisons between Zeffy's and Givebutter's product offerings and compensation models.

38.    Zeffy's false and misleading statements have caused and continues to cause actual deception or at least a tendency to deceive a substantial portion of the intended audience.

39.    The deception is material in that it is likely to influence purchasing decisions.

40.    The products impacted by the deception, including Zeffy's online fundraising product offerings and Givebutter's online fundraising product offerings, are sold and used in interstate commerce within the United States and elsewhere.

41.    Givebutter has been injured and continues to suffer a likelihood of injury in terms of declining sales, loss of good will, reputation, customers, and prospective customers, and the need to incur costs to combat market confusion caused by Zeffy's false statements and misleading comparisons.  Givebutter has suffered and will suffer irreparable harm.

42.    Zeffy's conduct was willful, malicious, and in bad faith.

43.    Under 15 U.S.C. § 1117(a), Givebutter is entitled to recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." Givebutter is further entitled to recover up to three times its actual damages.

44.    Extraordinary circumstances exist such that, under 15 U.S.C. § 1117(a), Givebutter is entitled to recover its attorneys' fees.

45.    Givebutter is also entitled to injunctive relief.

**Count II**
**Delaware Unfair or Deceptive Trade Practices, 6 Del. Code § 2532**

46.    The allegations set forth above are incorporated by reference as if fully set forth herein.

47.    Zeffy's false statements of fact and deceptive comparisons also violate the Delaware Unfair or Deceptive Trade Practices Act, 6 Del. Code § 2532 because they "[r]epresent[] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," they "[d]isparage[] the goods, services, or business of another by false or misleading representation of fact," and they constitute "conduct which similarly creates a likelihood of confusion or of misunderstanding."  6 Del. Code § 2532(a)(5), (8), and (12).

48.     Zeffy made its false and misleading statements willfully, knowingly, recklessly, and with actual malice.

49.     Under 6 Del. Code § 2533(c), Givebutter is entitled to recover three times its actual damages.

50.     Exceptional circumstances exist such that, under 6 Del. Code § 2533(b), Givebutter is entitled to recover its attorneys' fees.

**Count III**
**Unfair Competition**

51.     The allegations set forth above are incorporated by reference as if fully set forth herein.

52.     Zeffy's false and misleading statements in its marketing, advertising, and promotional activities constitute unfair competition that has deceived, or is likely to deceive, customers and has caused, or is likely to cause, injury to Givebutter.

53.     Zeffy's false and misleading statements have affected, or will affect, customers' decision to use or not use Givebutter's services. Zeffy made these false and misleading statements in the context of commercial advertising or promotion, as they were made for the purpose of influencing the intended audience to choose to use Zeffy's services instead of Givebutter's, as well as to harm Givebutter's reputation and business prospects in the marketplace.

54.     Zeffy made its false and misleading statements knowingly, recklessly, and with actual malice.

55.     Zeffy's false and misleading statements likely have deceived and, unless stopped, will continue to deceive others about Givebutter's services and fee structure.

56.    Zeffy's false and misleading statements have caused and are likely to cause substantial harm to Givebutter in the marketplace, including lost business and loss of goodwill and reputation.

**Count IV**
**False Mark in Violation of Lanham Act, 15 U.S.C. § 1125(a)(1)(A)**

57.    The allegations set forth above are incorporated by reference as if fully set forth herein.

58.    Zeffy's removal of Givebutter's mark from one page on Zeffy's website, followed by its subsequent replacement with a false mark – not Givebutter's mark – in combination with Givebutter's name is intended to knowingly or recklessly make it appear that the false mark is Givebutter's mark.

59.    Zeffy's use of the false mark constitutes a use in commerce of a symbol or device or a false designation of origin, within the meaning of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), which is likely to cause confusion, mistake, or deception as to the affiliation, connection, source, origin, authorization, sponsorship, and/or approval of Zeffy's commercial activities with respect to Givebutter's mark.

60.    This false mark is likely to cause confusion or mistake about Givebutter's mark and to dilute Givebutter's true mark.

61.    Zeffy's use of the false mark has caused and continues to cause actual deception or at least a tendency to deceive a substantial portion of the intended audience.

62.    The deception is material in that it is likely to influence purchasing decisions.

63.     The products impacted by the deception, including Zeffy's online fundraising product offerings and Givebutter's online fundraising product offerings, are sold and used in interstate commerce within the United States and elsewhere.

64.     Givebutter has been injured and continues to suffer a likelihood of injury in terms of declining sales, loss of goodwill, reputation, customers, and prospective customers, and the need to incur costs to combat market confusion caused by Zeffy's false mark. Givebutter has suffered and will suffer irreparable harm.

65.     Zeffy's conduct was willful, malicious, and in bad faith.

66.     Under 15 U.S.C. § 1117(a), Givebutter is entitled to recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." Givebutter is further entitled to recover up to three times its actual damages.

67.     Extraordinary circumstances exist such that, under 15 U.S.C. § 1117(a), Givebutter is entitled to recover its attorneys' fees.

68.     Givebutter is also entitled to injunctive relief.

### Request for Relief

Wherefore, Givebutter respectfully requests this Court enter judgment against Zeffy and grant the following relief:

a.     Enjoin Zeffy from disseminating or causing the dissemination of the false and misleading statements identified herein and any similar false or misleading statements;

b.     Enjoin Zeffy from disseminating or causing the dissemination of the false mark it associated with Givebutter;

c.    Require Zeffy to take all necessary corrective measures to correct its false and misleading statements, including publication of corrections;

d.    Require Zeffy to take all necessary measures to correct its dissemination of the false mark, including publication of corrections;

e.    Award Givebutter monetary damages in an amount to be shown at trial;

f.    Award Givebutter punitive damages;

g.    Award Givebutter interest on all monetary damages;

h.    Award Givebutter its costs and expenses of this litigation, including expert witness fees, consultant fees, and attorneys' fees, as permitted by law;

i.    Award Givebutter statutory damages, including treble damages, as permitted by law; and

j.    Grant such other and further relief as the Court may deem just and proper.

**Jury Demand**

Plaintiff demands a trial by jury on all issues so triable.


OF COUNSEL:

Matthew J. MacLean
Meaghan Murphy
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, D.C.  20036
(202) 663-8183
matthew.maclean@pillsburylaw.com
meaghan.murphy@pillsburylaw.com

January 21, 2025

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

*/s/ David J. Teklits*
David J. Teklits (#3221)
Jacob M. Perrone (#7250)
1201 N. Market Street, 16th Floor
Wilmington, DE  19801
(302) 658-9200
dteklits@morrisnichols.com
jperrone@morrisnichols.com
   *Attorneys for Plaintiff*
   *Givebutter, Inc.*